UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| KIMBERLY FLANIGAN, | : | CASE NO. 5:23-cv-00296 |
|  | : |  |
| Plaintiff, | : | OPINION & ORDER |
|  | : | [Resolving Doc. 18] |
| v. | : |  |
|  | : |  |
| WESTROCK SERVICES, LLC, | : |  |
|  | : |  |
| Defendant. | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Kimberly Flanigan sues Defendant WestRock Services, LLC for alleged violations of federal and Ohio employment law. Flanigan claims that WestRock committed sex discrimination by applying its attendance policy unequally between Flanigan and her male coworkers. Flanigan also claims that WestRock retaliated against her when she filed a grievance under her union contract alleging her sex discrimination claim. Specifically, Flanigan alleges that after arbitration, WestRock reset all its employees' attendance records but treated her differently by not resetting hers.

Defendant WestRock moves to dismiss this case for failure to state a claim. The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Plaintiff Flanigan began working for Defendant WestRock.[1]

As a WestRock employee, Flanigan was subject to WestRock's attendance policy.[2] The attendance policy imposed discipline based on an employee's number of attendance

---

[1] Doc. 10-1 at ¶ 15.
[2] *Id.* at ¶ 18.

Case No. 5:23-cv-00296
GWIN, J.

points, which the attendance policy refers to as "interruptions."[3]  Interruptions include

absences, tardies, failing to clock in or out, and other related attendance issues.[4]  Under the

attendance policy, WestRock could fire any employee who accumulated seven interruptions

in a twelve-month period.[5]

According to Plaintiff Flanigan, WestRock did not apply this attendance policy

evenhandedly.  Flanigan alleges that WestRock allowed male employees with more than

seven interruptions to continue working.[6]  Flanigan also alleges that male employees did not

receive interruptions even when they were tardy or failed to clock out.[7]

Even though WestRock was allegedly lenient with its male employees' attendance

issues, on August 4, 2021, WestRock fired Flanigan for violating the attendance policy.[8]

After WestRock fired her, Flanigan filed a union grievance and participated in

arbitration, arguing that WestRock discriminated in how it applied its attendance policy.[9]

After a hearing, the arbitrator found in Flanigan's favor and awarded reinstatement.[10]

After the arbitration, WestRock reset all its employees' attendance interruptions to

zero except for Flanigan's.[11]  Plaintiff Flanigan claims the failure to similarly reset her

attendance interruptions was retaliation for filing her union grievance.  Flanigan says that she

chose to not accept the arbitrator-ordered reinstatement because of the disparity she claims

regarding resetting the interruptions.[12]

---

[3] Doc. 10-1 at ¶ 18.
[4] *Id.* at ¶ 19.
[5] *Id.* at ¶ 25.
[6] *Id.* at ¶¶ 27–28, 33, 35–36.
[7] *Id.* at ¶¶ 29, 34, 39–43.
[8] *Id.* at ¶ 25.  The complaint states that Flanigan was fired on April 4, 2021, which appears to be a typo based on the other dates discussed in the complaint.  *Id.* at ¶¶ 20–24.  In their motion briefing, both parties acknowledged that Flanigan was fired on August 4, 2021.  Doc. 18-1 at 2; Doc. 8 at 4.  As such, the Court will treat August 4, 2021 as Flanigan's firing date.
[9] Doc. 10-1 at ¶¶ 48–49.
[10] *Id.* at ¶ 50.
[11] *Id.* at ¶¶ 52–53.
[12] *Id.* at ¶ 56.

Case No. 5:23-cv-00296
GWIN, J.

Instead, on July 7, 2022, Flanigan dual filed charges with the Equal Employment Opportunity Commission (EEOC) and Ohio Civil Rights Commission (OCRC).[13]  On February 15, 2023, Flanigan filed suit in this Court.[14]

In her original complaint, Plaintiff Flanigan raised claims under the Family and Medical Leave Act, Title VII, and Ohio employment law.[15]  WestRock moved to dismiss the original complaint,[16] and the parties fully briefed that motion.[17]  But before the Court ruled on WestRock's motion to dismiss, Flanigan asked the Court for leave to amend her complaint so that she could remove the Family and Medical Leave Act claims.[18]  The Court granted Flanigan's request.[19]

Flanigan's amended complaint contains four claims.  The first two claims are for sex discrimination under Title VII and alternatively under Ohio law.[20]  Flanigan also makes two claims for retaliation under Title VII and for retaliation under Ohio law.[21]

Defendant WestRock moved to dismiss the amended complaint.[22]  Flanigan responded by incorporating her opposition to the original motion to dismiss.[23]  Because the discrimination and retaliation claims did not change between the original and amended complaints, the Court instructed WestRock not to file a new reply for its motion to dismiss

---

[13] Doc. 18-3.
[14] Doc. 1.
[15] *Id.*
[16] Doc. 4.
[17] Doc. 8 (opposition to original motion to dismiss); Doc. 11 (reply in support of original motion to dismiss).
[18] Doc. 10.
[19] Doc. 12.
[20] Doc. 10-1 at ¶¶ 58–77.
[21] *Id.* at ¶¶ 78–85.  Flanigan combines both claims as a single count, but the Court treats them as separate claims.
[22] Docs. 13, 18.
[23] Doc. 16; *see also* Doc. 8 (opposition to original motion to dismiss).

Case No. 5:23-cv-00296
GWIN, J.

the amended complaint.[24]  Instead, the Court relies on WestRock's reply from the original

motion to dismiss briefing.[25]

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must allege

enough facts to make out a plausible claim to relief.[26]  In deciding such motions, courts must

accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff,

and otherwise construe the complaint in the light most favorable to the plaintiff.[27]  However,

courts need not accept conclusory allegations as true.[28]

## III.    DISCUSSION

### A.  Documents Outside the Pleadings

Defendant WestRock attaches two documents to its motion to dismiss that were not

attached to the complaint: Flanigan's EEOC/OCRC charge[29] and the arbitration decision

awarding Flanigan reinstatement.[30]  The Court begins by addressing whether it may consider

those two documents when deciding WestRock's motion to dismiss.

On a motion to dismiss, the Court generally may not consider documents outside the

pleadings.[31]  However, there is an exception to that rule.  The Court may consider a

document that is "referred to in the plaintiff's complaint and [is] central to her claim."[32]

---

[24] Doc. 17.
[25] Doc. 11.
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[27] *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).
[28] *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)).
[29] Doc. 18-3.
[30] Doc. 18-2.
[31] *Life Changing Events, LLC v. Heitkoetter*, No. 5:19-cv-02057, 2020 WL 7769721, at *3 (N.D. Ohio Dec. 30, 2020) (quoting *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).
[32] *Id.* (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

- 4 -

Case No. 5:23-cv-00296
GWIN, J.

Under this rule, the Court can consider the EEOC/OCRC charge.  The complaint expressly refers to the EEOC/OCRC charge.[33]  And the charge is central to Flanigan's claims because Flanigan must show that she has exhausted her EEOC administrative remedies.[34]

However, the Court cannot consider the arbitration decision.  Although the complaint arguably refers to the arbitration decision, Flanigan's claims do not rely upon the arbitration decision's reasoning.  The arbitration decision is irrelevant to Flanigan's sex discrimination claims because the arbitration did not occur until after the alleged discrimination.  And Flanigan alleges that WestRock retaliated due to her *act* of challenging WestRock in arbitration.  Thus, the *contents* of the arbitration decision are not material to Flanigan's retaliation claims.

### B. Sex Discrimination Claims

Defendant WestRock makes two arguments against Flanigan's sex discrimination claims.  First, as to Flanigan's Title VII discrimination claim only, WestRock argues that Flanigan failed to timely file her EEOC charge within the statute of limitations.[35]  Second, WestRock argues that both the Title VII and Ohio discrimination claims are barred by preclusion doctrines because Flanigan already raised sex discrimination in arbitration.[36]

The Court finds that the statute of limitations bars Flanigan's Title VII discrimination claim, but preclusion does not bar either of Flanigan's discrimination claims.  Because WestRock raises no other grounds to dismiss the Ohio sex discrimination claim, Flanigan may move forward with that claim.

---

[33] Doc. 10-1 at ¶ 8.
[34] *Dalton v. Franklin Cnty. Sheriff's Off.*, No. 2:15-cv-816, 2015 WL 7017369, at *4 (S.D. Ohio Nov. 12, 2015).
[35] Doc. 18-1 at 7.
[36] *Id.* at 7–10.

Case No. 5:23-cv-00296
GWIN, J.

### 1. Title VII Statute of Limitations

Under Title VII, a plaintiff must file a discrimination charge with the EEOC within either 180 or 300 days of the alleged unlawful employment practice.[37] In Ohio, the longer 300-day period applies.[38]

The limitations period begins to run from the day that the alleged unlawful employment action is communicated to the plaintiff.[39] In this case, Flanigan alleges that the unlawful employment discriminatory action occurred when she was fired.[40] So, the limitations period began to run on Flanigan's firing date: August 4, 2021.[41] Flanigan did not file her EEOC/OCRC charge until July 7, 2022—337 days after her firing date.[42]

Since Flanigan did not file her EEOC/OCRC charge until after the limitations period had passed, her Title VII discrimination claim is time-barred.

Plaintiff Flanigan argues that the limitations clock should not have begun until June 2022, when WestRock reset other employees' attendance points.[43] In essence, Flanigan argues that the limitations clock for her *discrimination* claim did not begin until after the alleged unlawful employment action for her *retaliation* claim took place.

Flanigan cannot combine her discrimination and retaliation claims for statute of limitations purposes. As the Supreme Court has held, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[44] An EEOC charge can cover only "discrete acts that occurred within

---

[37] *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999)).
[38] *Id.*
[39] *Id.*
[40] Doc. 10-1 ¶¶ 44–46.
[41] *See supra* note 8.
[42] Doc. 18-3 at 2 (PageID #: 280).
[43] Doc. 8 at 11–12.
[44] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Case No. 5:23-cv-00296
GWIN, J.

the appropriate time period."[45]  In other words, all discrete discriminatory acts that occurred

more than 300 days prior to the EEOC charge "are untimely filed and no longer actionable."[46]

Here, Flanigan's termination and the resetting of employees' attendance points were

discrete employment actions, so different limitations periods apply to Flanigan's Title VII

discrimination and to Flanigan's Title VII retaliation claims.  Thus, Flanigan's Title VII

discrimination claim is time-barred.

### 2.  Preclusion

Defendant WestRock argues that Flanigan is stopped from litigating her discrimination

claims in court because an arbitrator already ruled on Flanigan's discrimination allegations.

As an initial matter, the Court notes that it is unsettled whether state or federal

preclusion law applies to the unconfirmed arbitration award here.[47]  However, the Court

need not resolve this choice-of-law question now.  Regardless of whether federal or Ohio

preclusion law applies, WestRock's argument fails.

For one, the Court decided above that it cannot consider the arbitration award on a

motion to dismiss.  Without the arbitration award, the Court cannot determine whether

preclusion applies.

More fundamentally, WestRock appears to misunderstand preclusion.  In its motion

to dismiss, WestRock relies on collateral estoppel, also called *issue* preclusion.[48]  WestRock

does not raise res judicata, also known as *claim* preclusion.

---

[45] *Morgan*, 536 U.S. at 114 (internal quotation marks omitted).
[46] *Id.* at 115.
[47] Although the Full Faith and Credit Act requires federal courts to apply state preclusion law to decisions from state "judicial proceedings," arbitration is not a "judicial proceeding" subject to that Act.  *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 629 (6th Cir. 2014) (citations omitted).  This is also not a diversity jurisdiction case, which the Sixth Circuit has suggested might require the Court to apply state preclusion law.  *Id.*  Nor has any party confirmed the arbitration award in federal court, which might cause federal preclusion law to apply.  *Id.* at 630.
[48] Doc. 18-1 at 7–8.

Case No. 5:23-cv-00296
GWIN, J.

As the name suggests, claim preclusion prevents a party from later litigating claims that could have been raised in an earlier legal proceeding.[49]  In contrast, issue preclusion does not prevent a party from raising new claims but rather prevents parties from relitigating specific issues decided in the earlier legal proceeding.[50]  So, issue preclusion does not prevent Flanigan from raising her Title VII or Ohio discrimination claims.

If anything, issue preclusion would make it easier for Flanigan to succeed on her discrimination claims.  Because the arbitrator ruled in favor of Flanigan,[51] if issue preclusion were to apply, it would likely establish that Flanigan has already proven one element of the prima facie case for discrimination: that Flanigan was treated differently from similarly situated male employees.[52]

Even construed as claim preclusion, WestRock's argument still fails.  Claim preclusion applies only to claims that were raised, or could have been raised, in the prior legal proceeding.[53]  Nothing in the record indicates that Flanigan could have brought her Title VII or Ohio discrimination claims in arbitration.  As such, claim preclusion does not apply either.

\*     \*     \*

Flanigan's Title VII discrimination claim is barred by the statute of limitations, so the Court **DISMISSES** the Title VII discrimination claim.

---

[49] *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation omitted) (Ohio law); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (federal law).
[50] *Boggs*, 655 F.3d at 520 (citation omitted) (Ohio law); *Hamilton's Bogarts*, 501 F.3d at 650 (federal law).
[51] Doc. 10-1 at ¶¶ 49–50.
[52] *See Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004).
[53] *Boggs*, 655 F.3d at 520 (Ohio law) (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (federal law) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

Case No. 5:23-cv-00296
GWIN, J.

WestRock's preclusion arguments fail. Since WestRock did not raise any other arguments against Flanigan's Ohio discrimination claim, the Court **DENIES** WestRock's motion as to the Ohio discrimination claim.

## C. Retaliation Claims

Defendant WestRock raises three arguments against Flanigan's retaliation claims. First, WestRock argues the National Labor Relations Act (NLRA) preempts both Flanigan's federal and state retaliation claims under *Garmon* preemption.[54] Second, WestRock argues that Flanigan did not plead a materially adverse employment action.[55] And third, WestRock argues that Flanigan did not plead the alleged retaliation was caused by her participation in arbitration.[56]

The Court finds that none of WestRock's arguments justify granting WestRock's motion to dismiss.

### 1. *Garmon* Preemption

In *San Diego Building Trades Council v. Garmon*, the Supreme Court held that, "[w]hen an activity is arguably subject to s 7 or s 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."[57] This rule is known as *Garmon* preemption.

WestRock argues that *Garmon* preemption applies to Flanigan's retaliation claims because Flanigan alleged retaliation due to her arbitration participation[58] According to

---

[54] Doc. 18-1 at 5.
[55] *Id.* at 5–6.
[56] *Id.* at 6.
[57] 359 U.S. 236, 245 (1959).
[58] Doc. 18-1 at 5.

Case No. 5:23-cv-00296
GWIN, J.

WestRock, participating in arbitration is a labor activity that brings Flanigan's retaliation claims within the scope of the NLRA and *Garmon* preemption.  Westrock is mistaken.

### a. Title VII Claim

Despite *Garmon*'s broad language, the scope of *Garmon* preemption is limited when applied to potentially conflicting federal statutes.

*Garmon* primarily concerned "the extent to which state regulation must yield to subordinating federal authority."[59]  As such, "[t]he intersection of, or potential conflict between, *federal* statutes does not implicate the constitutional concerns underlying *Garmon* preemption."[60]

Moreover, it is "a cardinal principle of statutory construction [that] '[w]hen there are two [federal] acts upon the same subject, the rule is to give effect to both.'"[61]

Taken together, these principles mean that *Garmon* preemption does not apply when a claim (1) "operates as an independent federal remedy," and (2) "the labor questions in the case amount to no more than collateral issues."[62]  That is, federal courts may decide claims under a non-NLRA federal statute "so long as the statute does not conflict with §§ 7 or 8 of the NLRA and so long as litigants do not 'circumvent the primary jurisdiction of the NLRB simply by casting statutory claims [under §§ 7 or 8 of the NLRA] as violations of [an independent federal law].'"[63]

Applying this two-part test, the Court finds that *Garmon* preemption does not apply to Flanigan's Title VII claim.

---

[59] *Garmon*, 359 U.S. at 241.
[60] *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 862 (7th Cir.1998).
[61] *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 609 (6th Cir. 2004) (final alteration in original) (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)).
[62] *Id.* at 610; *see also Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 300 (6th Cir. 2011).
[63] *Trollinger*, 370 F.3d at 610 (alterations in original) (quoting *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 743–44 (1988)).

Case No. 5:23-cv-00296
GWIN, J.

First, Flanigan's Title VII retaliation claim is brought under an independent federal remedy. Title VII acts separately from the NLRA and offers remedies separate from those under the NLRA.

Second, any labor questions raised by Flanigan's Title VII retaliation claim are collateral because the NLRA and Title VII prohibit different types of retaliation. The NLRA protects against retaliation motivated by an employee's participation in protected labor activity, such as by filing a union grievance.[64]

Title VII, though, protects against retaliation motivated by an employee's opposition to "any practice made an unlawful employment practice by this subchapter."[65] Title VII makes sex discrimination unlawful,[66] but Title VII says nothing about participating in labor activity or union grievance proceedings.

Since Title VII does not cover labor-related conduct, any labor questions that arise are necessarily collateral.

Indeed, the Supreme Court has made clear that the NLRA and Title VII can coexist without conflict. In *Alexander v. Gardner-Denver Co.*, the Supreme Court explained that federal civil rights legislation has "long evinced a general intent to accord parallel or overlapping remedies against discrimination."[67] In the context of Title VII, this "manifests [as] a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes."[68] So, "an individual does not

---

[64] *Broadbent v. Elliott-Lewis Corp.*, No. 1:07-cv-0314, 2007 WL 2688290, at *4 (N.D. Ohio Sept. 11, 2007) (citing *OPW Fueling Components v. NLRB*, 443 F.3d 490, 496 (6th Cir. 2006)).
[65] 42 U.S.C. § 2000e-3(a).
[66] 42 U.S.C. § 2000e-2(a).
[67] 415 U.S. 36, 47 (1974).
[68] *Id.* at 48.

Case No. 5:23-cv-00296
GWIN, J.

forfeit his [Title VII] private cause of action if he first pursues his grievance to final arbitration

under the nondiscrimination clause of a collective-bargaining agreement."[69]

Alexander is directly on point in this case.  Flanigan pursued her sex discrimination

grievance to final arbitration.[70]  The fact that Flanigan did so does not bar her from raising

any Title VII claims.

Additionally, while the Sixth Circuit has not squarely ruled on whether Garmon

preemption applies to Title VII, at least one other circuit has held categorically that "claims

under Title VII are not preempted by the NLRA."[71]  And another circuit has held that Garmon

preemption never applies to non-NLRA federal claims.[72]

That said, a plaintiff cannot avoid Garmon by simply casting an NLRA claim as a Title

VII claim.[73]  But the fact that Flanigan made her sex discrimination accusation in a union

grievance and arbitration does not necessarily take her retaliation claim out of Title VII's

realm.  Grievances can be Title VII protected activity if they are related to employment

discrimination.[74]

Here, the complaint says that WestRock retaliated against Flanigan because of

Flanigan's participation in arbitration.[75]  But the complaint also says that WestRock retaliated

because Flanigan opposed WestRock's disparate application of its attendance policy.[76]

---

[69] Alexander, 415 U.S. at 49.
[70] Doc. 10-1 at ¶¶ 48–50.
[71] Britt v. Grocers Supply Co., 978 F.2d 1441, 1447 (5th Cir. 1992).
[72] Smith v. Nat'l Steel & Shipbuilding Co., 125 F.3d 751, 756 (9th Cir. 1997).
[73] Trollinger, 370 F.3d at 610.
[74] Batuyong v. Gates, 337 F. App'x 451, 456 (6th Cir. 2009) (citing Kodl v. Bd. of Educ., 490 F.3d 558, 563 (7th Cir. 2007)); see also Longino v. City of Cincinnati, No. 1:12-cv-424, 2013 WL 1412192, at *8 (S.D. Ohio Apr. 8, 2013) (holding that a Title VII retaliation claim could survive a motion to dismiss where the plaintiff alleged that he accused his employer of unlawful discrimination in a grievance).
[75] Doc. 10-1 at ¶ 55.
[76] Id. at ¶ 54.

Case No. 5:23-cv-00296
GWIN, J.

For purposes of *Garmon* preemption, this is enough to place Flanigan's retaliation claim within Title VII's scope.  Whether the complaint sufficiently alleges a causal connection between WestRock's retaliation and Flanigan's actions is a question that the Court addresses further below.[77]

Therefore, *Garmon* does not bar Flanigan's Title VII retaliation claim.

### b.  State Law Claim

Unlike with Flanigan's Title VII claim, there is no question that *Garmon* applies to Flanigan's state law retaliation claim.  But even then, *Garmon* is not an unavoidable obstacle.

"[T]he Supreme Court directs courts to use a flexible approach in determining whether conduct that is regulated by the NLRA should nevertheless be subject to state control."[78] "[W]here the regulated activity is 'merely peripheral' to the central concerns of the NLRA, the states may regulate the activity."[79]

Courts weight two factors to determine when *Garmon* preempts a state regulation[80]: "(1) whether there exists a 'significant' state interest in protecting its citizens from the conduct; and (2) whether state jurisdiction over the arguable labor violation would entail 'little risk' of interfering with the uniform national labor policy."[81]  The second factor asks whether the state law claim is identical to a claim that could have been made to the National Labor Relations Board.[82]

---

[77] *See infra* Section III.C.3.

[78] *Broadbent*, 2007 WL 2688290, at *4 (citing *Farmer v. United Bhd. of Carpenters & Joiners of Am.*, 430 U.S. 290, 296–97 (1977)).

[79] *Nw. Ohio Adm'rs., Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001) (quoting *Garmon*, 359 U.S. at 243).

[80] In her opposition, Flanigan mistakenly cites the test for preemption under the Labor-Management Relations Act, a different issue than *Garmon* preemption under the NLRA.  Doc. 8 at 10 (quoting *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004)).

[81] *Nw. Ohio Adm'rs.*, 270 F.3d at 1027 (quoting *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 196 (1978)).

[82] *Id.* (citing *Sears*, 436 U.S. at 196).

- 13 -

Case No. 5:23-cv-00296
GWIN, J.

Applying this test, the Court finds that *Garmon* does not preempt Flanigan's Ohio retaliation claim.

Ohio enjoys a significant interest in protecting employees from sex discrimination.[83] By extension, Ohio has a significant interest in protecting employees from retaliation when those employees challenge sex discrimination. Thus, the first factor weighs against *Garmon* preemption.

Further, Flanigan's retaliation claim is not identical to a claim that could be raised before the National Labor Relations Board. The Board has jurisdiction over labor issues. Ohio's anti-retaliation law does not cover labor issues.[84] The second factor also weighs against *Garmon* preemption.

Since both factors weigh against preemption, *Garmon* does not bar Flanigan's Ohio retaliation claim.

### 2. Materially Adverse Employment Action

Second, WestRock contends that Flanigan did not plead a materially adverse employment action because maintaining two attendance points on Flanigan's record is a "petty slight[] or minor annoyance[]."[85]

Ohio retaliation claims mirror Title VII retaliation claims, so the Court considers both of Flanigan's retaliation claims together.[86]

---

[83] *See Lemerich v. Int'l Union of Operating Eng'rs*, No. Civ. 01-124-B-C, 2002 WL 655333, at *9 (D. Me. Apr. 19, 2002) (applying a *Garmon* preemption test similar to the Sixth Circuit's and concluding that Maine has a significant interest in protecting employees from sex discrimination).

[84] *See* Ohio Rev. Code § 4112.02.

[85] Doc. 18-1 at 6 (alterations in original) (quoting *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 599 (6th Cir. 2009)).

[86] *Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021) (citation omitted).

Case No. 5:23-cv-00296
GWIN, J.

The standard for materially adverse employment actions is "less onerous in the retaliation context than in the anti-discrimination context."[87]  An employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[88]  Whether an action is materially adverse under this standard "is an inherently fact-specific inquiry that necessarily 'depend[s] upon the particular circumstances' of the case."[89]

In these circumstances, the Court finds that Flanigan has alleged a materially adverse employment action.  While assigning additional attendance points might not be a materially adverse employment action on its own,[90] Flanigan has alleged more than just additional attendance points.  Flanigan has alleged that she alone was singled out among WestRock's entire employee population to not receive a full reset of her attendance points.[91]  Drawing all inferences in Flanigan's favor, the Court determines that this singling out could plausibly dissuade a reasonable worker from making a discrimination charge.

### 3. Causation

Finally, WestRock says that Flanigan has not alleged facts showing that WestRock retaliated because of her sex discrimination accusation.[92]  Instead, WestRock argues that Flanigan makes only conclusory causation allegations.[93]

---

[87] *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595–96 (6th Cir. 2007)).
[88] *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[89] *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008) (alteration in original) (quoting *Burlington*, 548 U.S. at 69).
[90] *See U.S. EEOC v. Ctr. One, LLC*, No. 2:19-cv-01242-CCW, 2022 WL 3577911, at *9 (W.D. Pa. Aug. 19, 2022) (issuing attendance points was not material for a Title VII failure to accommodate religion claim).
[91] Doc. 10-1 at ¶¶ 52–53.
[92] Doc. 18-1 at 6.
[93] *Id.*

- 15 -

Case No. 5:23-cv-00296
GWIN, J.

While the Court does not accept Flanigan's conclusory allegations as true, the Court nonetheless finds that Flanigan has alleged enough facts for both her Title VII and Ohio retaliation claims to survive a motion to dismiss.[94]

Flanigan alleged that she was singled out during WestRock's attendance point reset.[95] This singling out suggests that WestRock was specifically targeting Flanigan. This allegation, combined with the allegations that the attendance point reset happened soon after arbitration,[96] is enough to plead causation.[97]

*      *      *

The Court finds that *Garmon* preemption does not apply and that Flanigan has sufficiently alleged a materially adverse employment action and causation. Therefore, the Court **DENIES** WestRock's motion to dismiss Flanigan's retaliation claims.

## IV.   CONCLUSION

The Court **DENIES** WestRock's motion to dismiss Flanigan's Ohio sex discrimination claim and both Flanigan's Title VII and Ohio retaliation claims.  The Court **GRANTS** WestRock's motion to dismiss Flanigan's Title VII sex discrimination claim since Flanigan did not file her EEOC charge within the statute of limitations.

If Flanigan believes that she can allege additional facts showing that her Title VII sex discrimination claim is timely due to tolling, she may file a motion for leave to amend within **fourteen (14) days** of this Order.

---

[94] *See Threat*, 6 F.4th at 681 (Ohio retaliation claims mirror federal retaliation claims).
[95] Doc. 10-1 at ¶¶ 52–53.
[96] *Id.* at ¶¶ 47–53.
[97] *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (temporal proximity combined with other evidence of retaliatory conduct can be sufficient to establish causation).

Case No. 5:23-cv-00296
GWIN, J.

Finally, Flanigan's current amended complaint is filed on the docket only as an attachment to her motion to amend (Doc. 10-1).  Flanigan is **ORDERED** to file her amended complaint as a separate docket entry within **three (3) days** of this Order.

IT IS SO ORDERED.


Dated: November 29, 2023                    *s/      James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE